Kinsey C. J.
delivered the following charge to the jury— The prisoner at the bar stands indicted for burglary. The indictment charges, that he on the 12>th of December 1.792 about one in the morning of that day, with force and arms &c. the dwelling house of Daniel Cooper feloniously and burglariously did break and enter, and certain articles enumerated in the indictment, the property of the said D. Cooper did steal, take, and carry away.
To this indictment he has pleaded not guilty, and whether the evidence produced on the part of the State, has been sufficient to establish hjs guilt, is the question which you have been sworn to try.
This -question like most others of a criminal nature is compounded both of law and fact: of the latter you are in all cases the constitutional judges, and although the Court in stating the law, may perhaps be compelled to touch upon some of the facts, yet they must ultimately be left to your determination.
The crime of which the prisoner stands accused is technically called burglary, and is defined to be — the breaking and entering into the mansion house of another with the intent to commit some felony therein, and that in the night time.
This definition is an accurate one, and should be carefully kept in mind for almost every word of it is significant and important. Before any man can be legally convicted of this *441 crime, therefore, these five circumstances must be proved. 1 st There must be what the law calls a breaking. Zd There must be an entry. 3d The breaking and entry, or one of them must be in the night. A,th It must be done in a mansion house. 5th It must be done to the intent of committing some felony therein.
If the testimony which you have heard is to be believed, three of these five requisites need engross but little of your attention, because it is evident, that the prisoner had entered the lodging room of the prosecutor, which was a part of the mansion house, and was actually detected there in the night time.
These three particulars seem to be placed beyond a question if you believe the witnesses} and having disposed of them there remain but two others, viz. the breaking, and the intention with which the breaking was done, to occupy your attention.
On these points it may be proper to be a little more particular, for if any doubts can arise in the case, it must be upon one or both of these requisites. As to the breaking, I tak© the law to be, that, by this term it is not meant to imply any actual violence or force. If a man lifts up the latch of an. outward door, or if an outward door being open, a thief enters and unlatches or unlocks a chamber door with a felonious intent, in either case his act comes up to the idea affixed by the law to the word breaking so as to constitute the crime of burglary. 1 Hazvk. 160. b. 1. c. 38. sec. 4.1 Hale 553. If however all the doors be open and the thief enters through an open door, and after getting into the house should break open a chest or a cupboard, even fixed in the wall, this is not such a breaking as the law requires as one of the ingredients of a burglary.
A man’s house is said to be his castle, its security must not be lightly invaded, and to preserve this security and this sanctity the law has created safeguards, and imposes severe penalties upon their infringement. This is particularly the case in the night, a season appointed for rest, when a man is usually incapable of making any defence and when assistance is frequently remote and contingent. But it is necessary be» *442 fore you find the prisoner guilty upon this indictment, that you should be satisfied the doors of this house were shut, and were opened by the prisoner, or with his concurrance or connivance.
If these circumstances are established to your satisfaction, It is a breaking sufficient to constitute one of the ingredients of burglary; if they are not, though the prisoner may be guilty of larceny there is no burglary proved. It is necessa- ■■ ry to recapitulate the testimony which bears upon this point, you will judge how far it ought to operate.
The last thing to be considered, supposing the breaking to be proved, is, was the felony actually committed so as to manifest the intention with which he entered the house. The designs of the heart can rarely be proved in a direct manner by the testimony of witnesses. When a man designs to perpetrate a scheme of wickedness, he seldom communicates his. intention unless to an accomplice; hence the intent must in most cases be collected from the.circumstances. These may sometimes prove deceptive, but when without any forced construction, they speak the intention in a language clear and intelligible, they may be relied on as the best evidence which the nature of the case will admit of.
It is impossible to lay down any general rule, or to declare from what circumstances particular intentions are to be inferred. No two cases are exactly similar, and it is the business of the jury to form their opinion from a serious and deliberate consideration of the facts which appear in the testimony. It is however a good rule, and it is also a humane rule to which every virtuous man will assent, that where reasonable doubts exist, the jury, particularly in capital cases, should incline to acquit rather than condemn.
Facts are however the fairest criterions from which to infer the intention: I mean from the facts which occurred in the house, we may presume the intentions and views with which he entered it.
On this point you are in the first place to examine the facts, to weigh the evidence, and then to ask yourselves these questions — Is#. Die the prisoner open any chest, or appropriate to himself any part of the property of the owner, and mani *443 lest any intention to steal it, — or rather did he actually steal it, for the indictment charges, that the larceny was actually committed.
Upon this I must3 observe if one takes the property of another from the place where it was situated, and removes it to another, as he who takes goods out of a trunk and lays them on the floor, and is surprised and detected before he goes off, this is larceny. It is a sufficient carrying away if it he done with an intent to steal.
In the next place you are to ask yourselves whether the facts detailed in the evidence, show clearly» either collectively or separately that the design of the prisoner was actually to steal, and was the theft actually committed.
Considering the particular circumstances of this case, I think it not altogether unimportant further to observe, that when occurrences of this kind happen they naturally engross the thoughts and conversation of the neighbourhood. Many persons are fond of dwelling upon and relating the circumstances of such a transaction, and reports frequently obtain currency which rest upon no foundations of truth. This case especially has engaged the attention of the community, and it is by no means improbable that some accounts of it have reached the ears of all or the greater part of you. These reports and statements should not be permitted to weigh in your minds: your verdict should be founded altogether upon what you have heard in this place, and the solemn oaths which you have taken expressly require this. You should enter upon the consideration of the question without any foreign impressions.
In all capital cases moreover, the proofs should be full and clear. No presumption ought to be admitted but that which is called violent. The law presumes every man to be innocent until there is proof of his guilt. It never supplies by supposition or intendment any chasms or deficiencies in the testimony, more particularly when the punishment of death is to attend upon the conviction.
You are now to deliberate upon the evidence. If on consideration you shall think yourselves bound to say that the prisoner in the night time, entered the mansion house of *444 Daniel Cooper, with an intention to commit a felony therein, and did commit it, you will find him guilty of the crime of which he stands indicted. If you entertain any doubts, I do not mean doubts wantonly raised, but such as arise from a deliberate consideration of the testimony, these doubts should be determined in favour of life: — the prisoner should be acquitted.
The Jury found a verdict of Guilty and the Chief Jus*tice pronounced sentence of Death.