[No. D008658. Fourth Dist., Div. One. July 25, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY JOSEPH O'KEEFE, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of parts I, II, III and V.

COUNSEL

Paul J. Spiegelman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and John T. Swan, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

NARES, J.—In a 37-count information the People charged Timothy Joseph O'Keefe with assault to commit rape, 6 counts of burglary, methamphetamine possession, 3 counts of prowling, and 26 counts of making obscene telephone calls. The jury returned guilty verdicts on battery as a lesser

included assault offense, five residential burglary counts, methamphetamine possession, two prowling counts, burglary of a building, and twenty-five obscene telephone call counts. The court sentenced O'Keefe to prison for 12 years, 8 months.

O'Keefe raises numerous contentions on appeal. In the published portion of this opinion (part IV) we address whether individual student dormitory rooms are separate dwellings supporting multiple convictions under Penal Code[2] section 459. In the unpublished portion of this opinion, we consider whether (1) section 654 bars separate punishment for both burglary and the assault; (2) substantial evidence supports the conviction on count 5 (residential burglary); (3) the court properly instructed the jury on count 2 (residential burglary with the intent to commit rape); (4) substantial evidence supports the conviction on count 2; and (5) section 653m is unconstitutionally overbroad.

As explained below, we stay the sentence on count 1; we reverse O'Keefe's convictions on counts 11, 12, 14, 15, 17, 18, 22, 23, 24, 25, 27, 32, 36, and 37. O'Keefe's conviction on count 5 is reduced to second degree burglary. In all other respects, we affirm.

FACTS

In separate instances during January, May, and September 1987, security guards of Point Loma Nazarene College observed O'Keefe prowling near the Nease Hall women's dormitory and looking in windows. O'Keefe successfully avoided apprehension. However, in January 1987, a security guard saw O'Keefe leave the campus in a yellow Chevrolet Monza and noted four characters from the license plate, 1SED. A yellow Monza, license plate No. 1SED 868, was later identified as registered to O'Keefe.

On December 11, 1987, Nease Hall was closed and the students left campus for Christmas break. Upon their return in January 1988, several students noticed photographs of themselves and friends which had been attached on the walls and doors of their rooms or in the hallways were now missing.

Three students who had telephone answering machines discovered recorded messages containing heavy breathing and sexually suggestive statements. Shortly thereafter women students began receiving numerous telephone calls which contained obscene language, sexually suggestive state-

---

[2] All statutory references are to the Penal Code unless otherwise specified.

ments and heavy breathing. The caller often referred to pictures he had of the students and often stated he had been in their rooms over Thanksgiving and Christmas breaks.

In January 1988, student Kendra Anderson returned from Christmas break. Shortly thereafter she received telephone calls, at first only containing a deep, low shaky voice which "sounded like he was masturbating," and the next day, calls containing sexually suggestive statements. On January 23, 1988, around 3 a.m., Kendra was awakened by a man in her room standing over her and rubbing her vagina through her pajamas. She screamed, punched the man, and he fled.

Police identified O'Keefe as a suspect. Officers were assigned to follow him. On January 29 police lost O'Keefe, but later discovered his car parked near the campus. Later that evening, police saw O'Keefe running between two of the women's dormitories and arrested him.

On January 30, the day after O'Keefe's arrest, police obtained a search warrant and searched O'Keefe's residence. In his apartment, police found a student telephone directory from Point Loma Nazarene College and 32 photographs which were missing from the women's dormitory. Police also discovered a vial of methamphetamine in O'Keefe's car.

DISCUSSION

I-III*

. . . . . . . . . . . . . . . . . . . . . . . .

IV

*Student Dormitory Rooms as Separate Dwellings Under Section 459*

Section 459 provides: "Every person who enters any house, *room, apartment, tenement,* . . . or other building, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." (Italics added.) The court instructed the jury as to counts 2, 3, 4, 5, and 6: "[Y]ou must determine whether each of the individual dormitory rooms of the alleged victims constituted a separate and distinct inhabited dwelling house."[6] O'Keefe

---

* See footnote 1, *ante*, page 517.

[6] Initially, the court appeared to rule that the individual private rooms of students were "separate residential units" as a matter of law, but after objection from defense counsel decided to leave the matter to be decided by the jury.

contends the dormitory rooms within Nease Hall are not separate dwellings within the meaning of section 459. From this premise, he contends there is insufficient evidence to show separate entries in support of the burglary convictions on counts 3 through 6. O'Keefe also contends he improperly received multiple punishment on these same counts and count 8 in violation of section 654. We disagree, holding an individual student dormitory room is a separate inhabited dwelling within the meaning of section 459.

Nease Hall women's dormitory is composed of three interconnected, two-story buildings housing approximately two hundred seventy-two women. The individual dormitory rooms within the hall are generally designed to house two students. Each room has beds, desks, and separate telephones. Each room also has separate locks and the occupants of the rooms have a right to exclude others. The students share kitchen, bathroom and lounge areas.

█  The fact that each of the rooms is within the one building (Nease Hall) does not mean they are not separate dwellings within the meaning of section 459. "There may be more than one dwelling under the same roof." (*People* v. *Fleetwood* (1985) 171 Cal.App.3d 982, 987 [217 Cal.Rptr. 612].) The situation is analogous to a hotel or apartment complex. In *Fleetwood,* the court held that separate rooms within a hotel qualified as a separate inhabited dwelling house within the meaning of sections 213.5 (now repealed) and 460(1). In *People* v. *James* (1977) 19 Cal.3d 99 [137 Cal.Rptr. 447, 561 P.2d 1135], separate burglaries occurred when the defendant broke into separately leased offices in a commercial building. In *State* v. *Cochran* (1983) 191 Conn. 180 [463 A.2d 618], entry into a separately locked bedroom within one house constituted a separate burglary.

O'Keefe's analogy of life in a student dormitory with life in a single-family residence does not apply. Although students may share kitchen and bathroom facilities within Nease Hall, this does not make them one big family. In many apartment and hotel complexes, facilities are shared but separate burglaries of the individual rooms may still occur. At Nease Hall each student lives and enjoys separate privacy in each of their individual dormitory rooms. These rooms are their homes while attending school. Unauthorized entry into each dormitory room presents a new and separate danger to each of the occupants. Accordingly, individual dormitory rooms and the students who occupy them are entitled to protection under the meaning of section 459.

Therefore, because we conclude each individual dormitory room is a dwelling within the meaning of section 459, separate entries occurred. Accordingly, substantial evidence supports his conviction.

■ Further, no multiple punishment prohibition under section 654 exists for each of these burglaries. Each dormitory room is a separate dwelling within the meaning of section 459. Thus, entry into each room was separate and divisible conduct. O'Keefe "is not entitled to [four] exempt burglaries merely because his victims chose the same landlord." (*People* v. *James, supra*, 19 Cal.3d at p. 119.)

V*

. . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The sentence on count 1 (battery) is stayed. The conviction on count 5 (first degree burglary) is reduced to second degree burglary. Counts 11, 12, 14, 15, 17, 18, 22, 23, 24, 25, 27, 32, 36, and 37 are reversed for insufficiency of evidence and the trial court is instructed to enter a judgment of acquittal on those counts. The remaining judgment is affirmed. The case is remanded for resentencing in compliance with this decision, and the trial court is directed to file an amended abstract judgment and forward it to the Department of Corrections.

Kremer, P. J., and Wiener, J., concurred.

A petition for a rehearing was denied August 20, 1990, and appellant's petition for review by the Supreme Court was denied October 30, 1990.

---

*See footnote 1, *ante*, page 517.