[No. S098290. June 6, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JOSEPH SPARKS, Defendant and Appellant.

## COUNSEL

Robert E. Boyce, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Garrett Beaumont, Laura Whitcomb Halgren, Elizabeth A. Hartwig and Steven T. Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—Section 459 of the Penal Code[1] provides, in part, that one who "enters *any* house, *room,* apartment, . . . store, . . . or other building . . . with intent to commit . . . larceny or any felony is guilty of burglary." (Italics added.) We granted review to address a conflict in Court of Appeal decisions concerning whether a defendant's entry into a bedroom within a single-family house with the requisite intent can support a burglary conviction if that intent was formed only after the defendant's entry into the house. We conclude that such an entry can support a burglary conviction under section 459, and hence reverse the judgment of the Court of Appeal, which reached a contrary conclusion.

### I.

At approximately noon on April 20, 1999, 22-year-old Ana I. answered defendant's knock at the door of her single-family home in Vista. Defendant, then 25 years of age, attempted to sell Ana some magazines, but she stated she was not interested. Defendant asked Ana for a glass of water, which she provided to him as he remained outside the house. Defendant eventually asked Ana whether he could enter the house, and he did so. (Ana could not recall at trial whether she invited defendant to enter.)

Defendant sat at the dining room table while Ana stood in the "area where the door to the kitchen was." Eventually Ana sat at the table with defendant. Defendant persisted in his attempt to sell a magazine subscription, but soon changed the subject, asking Ana whether she had a boyfriend. When told that she did not, defendant asked her why she did not. Ana revealed that she had broken up with her boyfriend. Ana felt nervous because she did not

---

[1]Unless otherwise specified, all statutory references are to the Penal Code.

speak English well and "did not know how to answer the questions he was asking."[2] Ana asked defendant to leave, telling him that she had to depart to pick up her niece and saying to defendant, "can you go out," while raising her hand and making a motion. After some time, Ana repeated to defendant that she had to pick up her niece at school and when he still did not leave the house, Ana got up, walked to the living room to turn off the stereo, and again told defendant that she had to depart to pick up her niece.

At this point, defendant had been in the house, talking with Ana at the dining room table, for about 15 minutes. Defendant rose from the dining room table, walked to the living room where Ana was standing near the stereo, and asked her whether she liked the music that was playing. Ana replied that she did, and walked down the hall to her bedroom to find outdoor shoes to wear upon leaving the house.

Although Ana did not ask defendant to go with her into the bedroom, he followed her into that room. (There was no testimony that the bedroom door was closed, or that Ana opened it.) As Ana retrieved her shoes from the floor of the closet, she realized that defendant was in the bedroom with her, standing just inside the bedroom doorway. At that point, defendant may have asked Ana whether the bedroom was hers. Defendant blocked Ana's exit, diverted her attention by telling her to look out a window, and then shoved her face down onto the bed, pressing a pillow on top of her head as she began to scream. During her struggles, Ana began to see white spots and had difficulty breathing. Ultimately, defendant raped her, and then walked into the bathroom. Ana closed her bedroom door, and locked it. When defendant exited from the bathroom, he knocked on Ana's door. She told him to leave and stated that she was "not going to tell anybody, but he should leave."

Ana left the house through her bedroom window and walked to a school to meet her niece, who noticed that Ana had red splotches on her face. Later that day Ana told her mother and her sister that she had been attacked, and that evening Ana went to a hospital, where she described the assault to a police officer. A later medical examination revealed the presence of defendant's semen in Ana's vagina. Ana also showed signs of petechiae (pinpoint hemorrhaging) on her face, a condition consistent with asphyxia.

The trial court instructed the jury on the offense of burglary by using a modified version of CALJIC No. 14.50 as follows: "The defendant is accused in count one of having committed the crime of burglary, a violation

---

[2]Ana testified with the assistance of a court interpreter.

of section 459 of the Penal Code. [¶] ▆▆▆▆▆ Every person who enters a building or *any room within a building* with the specific intent to commit rape, a felony, is guilty of the crime of burglary in violation of Penal Code section 459."[3] (Italics added.) Based upon these and related instructions,[4] the prosecution argued to the jury that defendant could be found guilty of burglary if he formed the intent to rape either (i) prior to entering the house, or (ii) after entering the house, but prior to entering the bedroom in which the sexual assault occurred.

The jury convicted defendant of first degree burglary (§§ 459, 460) and forcible rape (§ 261, subd. (a)(2)), and found true the allegations that defendant personally used a deadly weapon (the pillow) (§§ 12022, subd. (b)(1), 12022.3, subd. (a)). The jury also found true the allegation that the forcible rape was committed during the commission of a residential burglary with the intent to commit forcible rape (§ 667.61, subds. (a) and (d)(4)). The trial court imposed a sentence of 29 years to life in prison.[5]

The Court of Appeal upheld defendant's conviction for forcible rape, but in a split decision reversed the burglary conviction for instructional error, setting aside the related true finding concerning the section 667.61 allegation. We granted the Attorney General's petition for review.

---

[3] The trial court also provided the jury with the instructions in written form. In minor and nonsubstantive respects, some of the written instructions deviated from the court's oral instructions. As past cases establish, under these circumstances we presume that the jurors were guided by the written instructions. (E.g., *People v. Osband* (1996) 13 Cal.4th 622, 687 [55 Cal.Rptr.2d 26, 919 P.2d 640].)

[4] The court further instructed the jury by using a modified version of CALJIC No. 14.51, as follows: "If you should find the defendant guilty of burglary, you must determine the degree thereof and state that degree in your verdict. [¶] There are two degrees of burglary. Every burglary of an inhabited dwelling house or *any room within that house* is burglary of the first degree. [¶] All other kinds of burglary are of the second degree." (Italics added.)

The court also incorporated by reference its earlier burglary instructions in instructing the jury concerning the sentence-enhancement allegations applicable to the offense of rape committed during the commission of a burglary: "It is alleged in Count Two that the defendant . . . forcibly raped [Ana I.] during the commission of a residential burglary as defined in Penal Code section . . . 460[, subdivision] (a) . . . with the intent to commit rape as defined in Penal Code section 261[, subdivision] (a)(2), within the meaning of Penal Code section 667.61[, subdivisions] (a) [and] (d)(4). Penal Code sections 460 and 261 are defined elsewhere in these instructions. [¶] If you find the defendant guilty of the crime of forcible rape as charged in Count Two, you must determine whether the defendant did so during the commission of a residential burglary as defined in [subdivision] (a) of Penal Code section 460, with the intent to commit rape as defined in Penal Code section 261[, subdivision] (a)(2)."

[5] The court imposed a sentence of 25 years to life for rape committed during a residential burglary with intent to rape (§§ 261, subd. (a)(2), 667.61, subds. (a) and (d)(4)), plus a consecutive four-year term for personally using the deadly weapon while committing the forcible rape (§ 12022.3, subd. (a)). Defendant was not separately sentenced for the burglary conviction standing alone.

## II.

The Attorney General asserts that the plain words of section 459 (defining as burglary the entry of "any . . . room . . . with intent to commit . . . larceny or any felony") establish that the court's instructions were correct and that the elements of the offense of burglary were established in this case.

Defendant contends, as the Court of Appeal majority held below, that the Legislature could not have intended for the circumstances presented here to constitute a burglary. He maintains that the word "room" in section 459 applies only to those rooms as to which there is an expectation of protection from intrusion—from room to room—that is comparable to the expectation of protection from intrusion into a house from outside the house. In other words, defendant argues that the term "any . . . room" as used in section 459 was intended to encompass only certain types of rooms—for example, a locked room within a single-family house or a separate dwelling unit within a boarding house, entry into which is generally unauthorized even for other legal occupants of the house.

If we were to view the issue before us from the perspective of how the offense of burglary currently is defined in other jurisdictions in the nation, defendant's proposed interpretation of that offense would have substantial support. During the past few decades, the legislatures of many of our sister states have been quite active in amending their respective burglary statutes in ways that either clarify or limit the meaning of the term "room," or otherwise narrow the circumstances in which entry of a room can constitute burglary. At the present time, statutes in most jurisdictions, consistent with the recommendation of the Model Penal Code,[6] make clear that the burglary statutes in these jurisdictions apply only to entry of a "room" that constitutes

---

[6]Model Penal Code, section 221.1, subdivision (1), first adopted in 1962, reads in relevant part: "A person is guilty of burglary if he enters a building or occupied structure, *or separately secured or occupied portion thereof,* with purpose to commit a crime therein . . . ." (Italics added.) As explained in the comment to this section, "[t]he provision in Subsection (1) as to separately secured or occupied portions of buildings and occupied structures takes care of the situation of apartment houses, office buildings, hotels, steamships with a series of private cabins, etc., where occupancy is by unit. It is the individual unit as well as the overall structure that must be safeguarded. Thus, while it would violate this section for a person to make an unprivileged entry into an apartment house for the purpose of stealing money or other valuables from a common safe, it also would violate the burglary provision if an intrusion is made into a single unit, even by an occupant of another unit of the same structure." (Model Pen. Code & Commentaries, com. 3(b) to § 221.1, p. 73.)

a "separate unit" or a "separately secured" or "separately occupied" portion of a building or structure.[7]

As noted, the interpretation proposed by defendant would focus upon the nature of the room entered and would inquire whether an occupant's reasonable expectation of protection from intrusion into that room *from the other rooms* is comparable to the expectation of protection from intrusion *into a house from outside the house*. As the dissenting justice in the Court of Appeal observed, under this view no burglary occurs "unless the nature of the room is such that it is considered as secure from entry from the interior of the structure as from the exterior, e.g., it is a *separate dwelling place or is kept locked*." (Italics added.) In other words, the limiting gloss proposed by defendant essentially would embrace the "separately secured or occupied" standard endorsed by the Model Penal Code and adopted, in one form or another, in most (but not all) other jurisdictions.[8]

---

[7]A typical statute provides that, for purposes of the offense of burglary, "each unit of a building consisting of two or more units separately secured or occupied is a separate building." (Haw. Rev. Stat. § 708-800; see Ala. Code Ann. § 13A-7-1(2); Ariz. Rev. Stat, § 13-1501, subd. 8; Ark. Code Ann. § 5-39-101(1)(B); Colo. Rev. Stat. Ann. § 18-4-201(2); Del. Code Ann. tit. 11, § 222(1); Ky. Rev. Stat. Ann. § 511.010(1); Mo. Rev. Stat. § 569.010(4); Mont. Code Ann. § 45-2-101(46); Neb. Rev. Stat. § 28-501; Nev. Rev. Stat. § 193.012, subd. 2; N.H. Rev. Stat. Ann. § 635:1, subd. I; N.J. Rev. Stat. § 2C:18-2; N.Y. Penal Law § 140.00, subd. 2; N.D. Cent. Code § 12.1-22-02, subd. 1; Ohio Rev. Code Ann. § 2911.12, subd. (A); 18 Pa. Cons. Stat. § 3502(a); S.C. Code Ann. § 16-11-310(1)(b); Tenn. Code Ann. § 39-14-401(1)(A); Tex. Penal Code Ann. § 30.01(1)(A); Utah Code Ann. § 76-6-201(1); Wash. Rev. Code § 9A.04.110(5); Wyo. Stat. Ann. § 6-3-301(a); see also Alaska Stat. § 11.81.900(b)(4) [when a "building consists of separate units, including apartment units, offices, or rented rooms, each unit is considered a separate building"]; Conn. Gen. Stat. § 53a-100(a) [essentially same]; Or. Rev. Stat. § 164.205(1) [essentially same]; Md. Ann. Code art. 27, § 35A [entry into separately owned or leased unit within a building constitutes burglary if it is "objectively apparent" that each such unit constitutes a separate dwelling]; and see Mich. Comp. Laws § 750.111 [entry into *"private* apartment" within a building or other structure constitutes burglary (italics added)]; Miss. Code Ann. § 97-17-33(1) [entry into *"private* room or office" inside building or structure constitutes burglary (italics added)];Vt. Stat. Ann. tit. 13, § 1201, subd. (b) [entry into "any portion" of a structure that differs from any other portion of the structure "with respect to license or privilege to enter" is burglary].)

[8]A minority of jurisdictions have statutes similar to California's, listing without qualification the word "room" (or a variant of that term) as a place, the entry into which, with the requisite intent, may constitute burglary. (See Ga. Code Ann. § 16-7-1, subd. (a); Idaho Code § 18-1401; Okla. Stat. tit. 21, § 1435; Wis. Stat. § 943.10, subd. (1)(f).) Defendant has not cited, nor have we found, any decision from these jurisdictions limiting such a statute in the manner presently suggested by defendant.

Two jurisdictions define burglary as entry, with requisite intent, into a "room used as a sleeping apartment." (D.C. Code Ann. § 22-801, subd. (a); N.C. Gen. Stat. § 14-51.) Yet other *jurisdictions have statutes that list and define the kind of structures, the entry into which may* constitute burglary, but without specifying or implying that one commits burglary by entering a room within that structure. (E.g., Fla. Stat. ch. 810, § 810.02, subd. (1); Ind. Code

Although the interpretation of the statute proposed by defendant (and endorsed by the majority in the Court of Appeal below) is not unreasonable, as explained below we do not write on a clean slate. In view of the history and prior interpretation of the California statute, we are not free to adopt by judicial construction a limitation on the term "room" that has been explicitly established in other jurisdictions only by explicit legislative action. Instead, in light of governing California precedent, we conclude that section 459 reasonably must be interpreted in the manner urged by the Attorney General.

## III.

At common law, the offense of burglary was defined as breaking and entering the dwelling house of another in the nighttime with intent to commit a felony. (2 Jones' Blackstone (1916) p. 2431 (Jones' Blackstone); see 2 LaFave & Scott, Substantive Criminal Law (1986) Crimes Relating to Property, § 8.13, p. 464.) "Across the intervening centuries these elements have been expanded or discarded to such an extent that the modern-day offense commonly known as burglary bears little relation to the common-law ancestor." (LaFave & Scott, *supra*, at p. 464; see *People v. Davis* (1998) 18 Cal.4th 712, 720-722 [76 Cal.Rptr.2d 770, 958 P.2d 1083]; *People v. Valencia* (2002) 28 Cal.4th 1, 6-8 [120 Cal.Rptr.2d 131, 46 P.3d 920].)

In California, the metamorphosis of common law burglary into statutory burglary began in 1850 with the adoption of section 58 of the Act Concerning Crimes and Punishments, from which today's Penal Code section 459 is derived. This first statute defined burglary as entering, in the nighttime and with the requisite intent, "any dwelling house, or any other house whatever . . . ." (Stats. 1850, ch. 99, § 58, p. 235.)[9]

Eight years later, in 1858, section 58 was amended by substituting for the phrase "any dwelling house, or any other house whatever," the phrase that exists today in section 459, "*any* house, *room*, apartment or tenement." (Stats. 1858, ch. 245, § 58 p. 206, italics added.)[10] Upon being codified into

---

§ 35-43-2-1; Iowa Code § 713.1.) Again, defendant has not cited, nor have we found in *any* jurisdiction, any case limiting a statute in the manner suggested by defendant.

[9]The statute read in full: "Every person who shall, in the night time, forcibly break and enter, or without force enter (the doors or windows being open) any dwelling house, or any other house whatever, or tent, or vessel, or other water craft, with intent to commit murder, robbery, rape, mayhem, larceny, or other felony, shall be deemed to be guilty of burglary, and upon conviction thereof, shall be punished by imprisonment in the state prison for a term not less than one nor more than ten years." (Stats. 1850, ch. 99, § 58, p. 235.)

[10]As so amended, the statute read: "Every person who shall, in the night-time, forcibly break and enter, or without force enter (the doors or windows being open) *any house, room, apartment or tenement*, or any tent, vessel, or water-craft, with intent to commit grand or petit

the Penal Code in 1872, the statute read essentially the same[11] and, as relevant here, section 459 continues to read the same today: "Every person who enters *any* house, *room*, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building . . . with intent to commit . . . larceny or any felony is guilty of burglary." (Italics added.)[12] Section 460, subdivision (a), currently specifies that "[e]very burglary of an inhabited dwelling house . . . is burglary of the first degree."

We proceed to examine the principal California decisions that have construed the word "room" in our burglary statute.

### A.

This court directly ruled upon the meaning of the word "room," as used in section 459, for the first time in *People v. Young* (1884) 65 Cal. 225 [3 P. 813] (*Young*).[13] In that case, the defendant entered a public railway station and thereafter entered a ticket office (which apparently had walls that were

larceny, or any felony, shall be deemed to be guilty of burglary, and, on conviction thereof, shall be punished by imprisonment in the state prison for a term not less than one nor more than ten years." (Stats. 1858, ch. 245, § 58, p. 206, italics added.)

[11]The statute read: "Every person who, in the night-time, forcibly breaks and enters, or without force enters through any open door, window, or other aperture, any house, room, apartment, or tenement, or any tent, vessel, water craft, or railroad car, with intent to commit grand or petit larceny, or any felony, is guilty of burglary." (1872 Pen. Code, § 459.)

[12]As most recently amended in 1991, section 459 now provides in full: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, as defined in Section 21 of the Harbors and Navigation Code, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, as defined in Section 635 of the Vehicle Code, any house car, as defined in Section 362 of the Vehicle Code, inhabited camper, as defined in Section 243 of the Vehicle Code, vehicle as defined by the Vehicle Code, when the doors are locked, aircraft as defined by Section 21012 of the Public Utilities Code, or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, 'inhabited' means currently being used for dwelling purposes, whether occupied or not. A house, trailer, vessel designed for habitation, or portion of a building is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises." (Stats. 1991, ch. 942, § 14, p. 4290.)

[13]Previously, in *People v. Stickman* (1867) 34 Cal. 242 (*Stickman*), the court briefly referred to the amendment that added the word "room" to the predecessor of section 459, but had no occasion to determine under what circumstances the statute applied to the entry of a room within a structure. The issue in *Stickman* arose out of a dispute in the case law concerning whether the term "dwelling house" included so-called outbuildings, and, if so, whether the dwelling house needed to be occupied (or used as a habitation) in order for a burglary charge to be proved. (*Stickman*, at pp. 244-245, citing 1 Bishop, Commentaries on The Criminal Law (1856) § 164 et seq., p. 151 et seq.) The court resolved that dispute in favor of the broadest interpretation of the statute, finding that the breaking and entering of an unoccupied outbuild-

eight to nine feet high but did not reach the ceiling) located within the station. We rejected the theory that section 459 required the defendant to have formed the required intent prior to entering the railway station, so long as he formed that intent prior to entering a room within that structure—the ticket office. Accordingly, we held that the trial court did not err in refusing a requested defense instruction that if the defendant conceived his intent to steal after he entered the railway station building, the jury should find the defendant not guilty. (*Young*, at p. 226.) We stated: "One who enters, with burglarious intent, a room of a house enters the house with such intent. . . ." (*Ibid.*) In this regard, *Young* reflected the prevailing common law understanding that entry from inside a structure into a room within that structure could constitute a burglary.[14]

Subsequent to *Young*, a number of California appellate court decisions have held that entry into various types of rooms can constitute burglary.

Most of these cases, like *Young*, concern entry into private rooms within public or commercial buildings. (E.g., *People v. Elsey* (2000) 81 Cal.App.4th 948 [97 Cal.Rptr.2d 269] (*Elsey*) [entry into separate, locked school classrooms]; *People v. Church* (1989) 215 Cal.App.3d 1151 [264 Cal.Rptr. 49] [entry into separately leased and locked offices in an office building]; *People v. Mackabee* (1989) 214 Cal.App.3d 1250 [263 Cal.Rptr. 183 ] [entry into an

ing—a walled and roofed chicken coop that was part of a barn, which in turn was situated 15 feet from the victim's home—constituted a burglary. Commenting upon the 1858 amendment to the burglary statute, in which the word "dwelling" was omitted and the words "room, apartment or tenement" added, the court asserted in *Stickman* that the "change was not made for the purpose of narrowing the previous definition, but with the intent to leave it as broad as at first and to meet the doctrine advanced by some of the cases, that an entry into an unoccupied room or apartment of a dwelling house was not a burglary. Hence the word 'dwelling' was omitted, and the words 'room, apartment or tenement' were added. . . . A house, in the sense of the statute, is any structure which has walls on all sides and is covered by a roof." (*Stickman*, at p. 245.)

[14]*Young* in turn relied upon *State v. Scripture* (1861) 42 N.H. 485, which also concerned entry into a railroad ticket office from inside a public structure. There the court stated: "[O]ne who, having entered through an open outer door of a dwelling-house, then breaks and enters an inner door, is guilty of breaking and entering the dwelling-house." *Scripture*, in turn, relied upon 2 Jones' Blackstone, *supra*, at page 2434, where the author asserted, "if a person leaves his doors or windows open, it is his own folly and negligence, and if a man enters therein, it is no burglary; yet, if he afterwards unlocks an inner or chamber door, it is so." *Scripture* also relied upon *State v. Wilson* (1793) 1 N.J.L. 439 (*Wilson*), which concerned the burglary of a private residence. In *Wilson* the court stated that "if an outward door, being open, a thief enters and unlatches or unlocks a chamber door, with a felonious intent, . . . his act comes up to the idea affixed by the law to the word breaking, so as to constitute the crime of burglary." (*Id.*, at p. 441; see also *State v. Rio* (1951) 38 Wash.2d 446 [230 P.2d 308, 311] (*Rio*) [quoting cases and legal encyclopedias for the proposition that at common law a burglary may be committed by a house guest or invitee who, with the requisite intent, enters a room that he has no right to enter].)

enclosed "office area" set off by "a waist-high counter about two-and-one-half feet wide" in the lobby of a building otherwise open to the public]; *People v. Edwards* (1971) 22 Cal.App.3d 598 [99 Cal.Rptr. 516] [entry into women's restroom inside hospital]; *People v. Garcia* (1963) 214 Cal.App.2d 681 [29 Cal.Rptr. 609] [entry into enclosed storage cage within a liquor store], disapproved on another ground in *Mozzetti v. Superior Court* (1971) 4 Cal.3d 699, 706 [94 Cal.Rptr. 412, 484 P.2d 84]; *People v. Davis* (1959) 175 Cal.App.2d 365 [346 P.2d 248] [entry into closed office from "lubrication room" of a service station]; *People v. Gaytan* (1940) 38 Cal.App.2d 83 [100 P.2d 496] [entry into storage room of cafe].)

In other decisions, courts have upheld burglary convictions based upon the defendant's (i) entry into a private room within a multi-unit lodging facility (e.g., *People v. O'Keefe* (1990) 222 Cal.App.3d 517 [271 Cal.Rptr. 769] (*O'Keefe*) [entry into separate student dormitory rooms]; *People v. Fleetwood* (1985) 117 Cal.App.3d 982 [217 Cal.Rptr. 612] [entry into motel room]), (ii) entry from the garage of a single-family home into a locked kitchen (*People v. Thomas* (1991) 235 Cal.App.3d 899 [1 Cal.Rptr.2d 434] (*Thomas*)), and (iii) entry, from inside a home, into a rented and locked bedroom within the home (*People v. Wilson* (1989) 208 Cal.App.3d 611 [256 Cal.Rptr. 422]).

Of all the cases applying section 459, only one, *People v. McCormack* (1991) 234 Cal.App.3d 253 [285 Cal.Rptr. 504] (*McCormack*), concerns the precise type of entry we face here—entry, by an ostensible guest in the home, from inside the living quarters of a single-family home, into the unsecured bedroom of a member of a family living in the home. Most of the other recent decisions described above—specifically, *Elsey, supra,* 81 Cal.App.4th 948, *Thomas, supra,* 235 Cal.App.3d 899, and *O'Keefe, supra,* 222 Cal.App.3d 517—have made a point of distinguishing *McCormack* and the normal single-family-home setting. We first discuss *McCormack*, and then the three other cited appellate decisions.

## B.

The defendant in *McCormack, supra,* 234 Cal.App.3d 253, entered a single-family home through an unlocked door, assertedly at the occupant's invitation. The occupant—the brother of the homeowner—observed the defendant in the kitchen and asked him to leave the house, but the defendant refused to do so. Instead, the defendant asked the occupant whether he wanted a beer and requested permission to use the telephone. (*Id.,* at p. 255.) The occupant departed and telephoned the police from a neighbor's residence. When the police arrived, they found the defendant (in a hallway of

the home) holding items taken from bedrooms. The defendant was charged with a single count of burglary. The trial court instructed that the " 'intent [to steal the personal property of another] need not be in the mind of the person at the time of the initial entry into the structure, if he subsequently forms the intent and enters a room within the structure.' " (*Ibid.*, bracketed material in original.) Consistent with this instruction, the prosecutor argued to the jury that the defendant committed burglary even if he formed the intent to steal after entering the house, so long as he did so before he entered one of the bedrooms. (*Ibid.*) The defendant was convicted of burglary and appealed.

The Court of Appeal in *McCormack* found the trial court's instruction "consistent with the literal language of the controlling code section. In its current form this code section states: 'Every person who enters any . . . room . . . with intent to commit grand or petit larceny or any felony is guilty of burglary.' (§ 459.) We have found no published decisions by a court of this state holding, on facts similar to those present here, that burglary is not committed when the intent to steal is formed after entry to a building but before entering a room therein from which the defendant intends to steal property." (*McCormack, supra,* 234 Cal.App.3d 253, 255.) Relying upon our decision in *Young, supra,* 65 Cal. 225, and some of the Court of Appeal decisions cited *ante*, at pages 80-81, the court held that because "the plain language of the code includes entry into a room within the definition of burglary," the instruction was proper. (*McCormack,* at p. 256.)

The court in *McCormack* also found that the basic policy underlying the burglary statute (see *People v. Gauze* (1975) 15 Cal.3d 709, 715 [125 Cal.Rptr. 773, 542 P.2d 1365]) supported its view: "Just as the initial entry into a home carries with it a certain degree of danger [to personal safety], subsequent entries into successive rooms of the home raise the level of risk that the burglar will come into contact with the home's occupants with the resultant threat of violence and harm. Applying the plain language of the statute therefore serves rather than frustrates the policy of the law." (*McCormack, supra,* 234 Cal.App.3d at p. 257.)[15]

### C.

One year prior to *McCormack*, the Court of Appeal in *O'Keefe, supra,* 222 Cal.App.3d 517, addressed whether entries into separate rooms in a college

---

[15]The court in *McCormack* also observed: "The statute specifically prohibits entry into a 'room.' If this wording did not serve the policy intended by the Legislature it need not have been included in the statute and it could have been removed or modified at any time in the more than 100 years since this code section was first adopted." (*McCormack, supra,* 234 Cal.App.3d at p. 257.)

dormitory supported convictions for separate burglary counts. The court answered in the affirmative. It reasoned that merely because "each of the rooms is within the one building . . . does not mean they are not separate dwellings within the meaning of section 459," and found that "an individual student dormitory room is a separate inhabited dwelling within the meaning of section 459." (*Id.*, at p. 521.)

The defendant in *O'Keefe, supra,* 222 Cal.App.3d 517, attempted to avoid this conclusion by arguing that the student dormitory rooms were analogous to rooms in a single-family home (as to which, the defendant assumed, multiple convictions under § 459 would not be proper). Without endorsing the defendant's assumption, the court in *O'Keefe* rejected the attempted analogy between dormitory rooms and bedrooms of a single-family home. First, it observed, a student dormitory is "analogous to a hotel or apartment complex" and not to a single-family home. (*O'Keefe, supra,* 222 Cal.App.3d at p. 521.) The court noted that "[i]n many apartment and hotel complexes, facilities are shared but separate burglaries of the individual rooms may still occur" (*ibid.*), and it cited decisions finding the entry into a bedroom of a tenant of a home to be burglary, and the entry into separate rooms in a business complex to constitute separate burglaries.[16] Second, the court in *O'Keefe* declined to analogize between students living in a dormitory and family residents occupying a single-family home, noting that although the dormitory residents "may share kitchen and bathroom facilities . . . , this does not make them one big family. . . . [E]ach student lives and enjoys separate privacy in each of their individual dormitory rooms. These rooms are their homes while attending school. Unauthorized entry into each dormitory room presents a new and separate danger to each of the occupants. Accordingly, individual dormitory rooms and the students who occupy them are entitled to protection under the meaning of section 459." (*O'Keefe,* at p. 521.)

## D.

Shortly after *McCormack* was filed, the Court of Appeal decided *Thomas, supra,* 235 Cal.App.3d 899. In that case the defendant first entered the garage of a single-family residence and then, while still in the garage, forcibly entered locked living quarters of the home—the kitchen. The prosecutor in *Thomas* argued that the jury could convict the defendant of

---

[16]On these points, the court in *O'Keefe* cited *State v. Cochran* (1983) 191 Conn. 180 [463 A.2d 618] (entry by guest of cotenant into separate and locked bedroom of another house tenant constituted entry into room under state burglary statute) and *People v. James* (1977) 19 Cal.3d 99 [137 Cal.Rptr. 447, 561 P.2d 1135] (separate burglaries occurred when the defendant broke into separately leased offices in a commercial building). (See *O'Keefe, supra,* 222 Cal.App.3d at p. 521.)

burglary if he formed an intent to steal in the garage but prior to entry into the kitchen. The defendant asserted that he could not be convicted of burglary under these circumstances, because when a garage is "an attached, integral part of a house, it must be considered simply one room of several which together constitute the dwelling for purposes of burglary." (*Id.*, at p. 905.) The court rejected the defense position, observing that section 459 proscribed entry into a "room" with felonious intent and "nothing in this language . . . would exempt [the defendant] from conviction for burglary simply because his entry into the [victims'] house took place from the garage rather than from somewhere outdoors." (*Thomas*, at p. 905.)

As in *O'Keefe*, however, the court in *Thomas, supra,* 235 Cal.App.3d 899, proceeded to distinguish the entry there at issue from other entries of rooms within single-family homes. The court emphasized that the defendant's "forcible and unauthorized entry into the living quarters of the [victims'] home [from the garage] was precisely the evil that the burglary statute is designed and intended to prevent. *The kitchen was separate from the garage.* It was protected and secured by a locked door which [the defendant] forced open with a crowbar. The [victims'] expectation of privacy and security within their living quarters *was clearly greater than that in their garage*, even if the garage may be considered part of the entire dwelling for burglary purposes. In our opinion, it would defeat the purposes of the burglary statute to hold in this case that [the defendant] could not be found guilty of burglary unless it was shown that he conceived his felonious intent prior to entering the garage . . . ." (*Thomas, supra,* 235 Cal.App.3d at pp. 906-907, italics added.) In the course of its discussion, the court in *Thomas* also asserted in a footnote: "[W]here a burglar enters several rooms in a single structure, each with felonious intent, and steals something from each, ordinarily he or she cannot be charged with multiple burglaries and punished separately for each room burgled *unless* each room constituted a separate, individual dwelling place within the meaning of sections 459 and 460." (*Thomas, supra,* 235 Cal.App.3d at p. 906, fn. 2, italics in original.)

### E.

Most recently, the court in *Elsey, supra,* 81 Cal.App.4th 948, addressed the defendant's entry into six classrooms, some of them located in the same building, on a single school campus. The court, distinguishing "entry into multiple rooms of a single-family house [from] the entries into multiple secured classrooms" (*id.*, at p. 959), upheld the resulting six burglary convictions.

In so concluding, the court in *Elsey* noted that section 459 provides in relevant part that "every person who enters a house [or] room . . ." with the

requisite intent is guilty of burglary, and it reasoned that "[s]ince entry into a 'house' with the requisite intent constitutes burglary under the plain language of [section 459], it would be redundant to claim that entry into the rooms of the house constitutes additional burglaries. The larger category subsumes the smaller." (*Elsey, supra,* 81 Cal.App.4th at p. 959.) The court then addressed the general situation that we face here—formation of the requisite intent by an ostensible or actual guest, after his or her initial entry into the house, but prior to entry of the subject room within the house. The court commented: "*Of course, where the 'house' may have been entered without the requisite intent, entry into the broader category does not constitute the burglary, allowing the courts to focus on an entry into a room in the house, with the requisite intent, as the basis for the burglary.*" (*Ibid.,* italics added.)

## IV.

Defendant asserts that the interpretation of section 459 set out in *McCormack, supra,* 234 Cal.App.3d 253, will produce bizarre results. He echoes the Court of Appeal majority below, which observed that the defendant in *McCormack* entered the kitchen in the home without the intent necessary for burglary, and that if the defendant had formed the requisite intent while in the kitchen and yet thereafter did not enter any other room, he would not have been guilty of burglary[17]—but if the defendant had gone into another room and then reentered the kitchen, this time with the requisite intent, he would have been guilty of burglary. The Court of Appeal majority also asserted that allowing a conviction of burglary on the present facts improperly would subject defendants to conviction of multiple counts of burglary for every room in the house entered with the requisite intent.

Justice Benke, dissenting in the Court of Appeal below, conceded that under *McCormack*'s interpretation of the statute, whether a particular entry into a room constitutes burglary will depend upon "the location of an actor when the requisite intent is formed," but further observed that this consequence "is not the result of the *McCormack* rule but of the nature of the crime of burglary itself as defined in section 459." Moreover, Justice Benke

---

[17]The statutes in some jurisdictions provide otherwise and include in their definition of burglary the situation where one enters *or remains* with the requisite intent. (See, e.g., Fla. Stat. ch. 810, § 10.02(1); Me. Rev. Stat. Ann. tit 17-A, § 401; N.J. Rev. Stat. § 2C:18-2; N.Y. Penal Law § 140.00, subd. 5; N.D. Cent. Code § 12.1-22-02, subd. 1; Vt. Stat. Ann. tit. 13, § 1201.) Section 459, by contrast, requires an *entry* with requisite intent. Accordingly, in the present case, defendant would not have committed burglary if, after entering the home as a guest, he formed the requisite intent in the dining room or in the living room, but thereafter did not enter another room within the home with that intent.

noted that even if the interpretation of the statute set out in *McCormack, supra,* 234 Cal.App.3d 253, may "allow[] the creative mind to formulate disconcerting hypotheticals about the application of the law of burglary," the rule proposed by defendant would do so as well: "For example, a person may enter a residence without the intent to commit a theft. He walks down a hall off of which there are two indistinguishable bedrooms. The first is the bedroom of a family member, the second the bedroom rented by a family friend. Under the [rule proposed by defendant and the majority below], if the person enters the first with the intent to commit a theft, he commits no burglary [because he has not invaded a separate possessory interest]. If he enters the second [with the intent to commit a theft], he commits a first degree burglary. This distinction makes no sense . . . and does not serve the policy basis of the crime." Accordingly, Justice Benke concluded that the rule proposed by defendant "simply exchanges one set of potential anomalies . . . for another," and she asserted that "[i]f I must choose my anomalies . . . , then I believe I am duty bound to choose those created by the Legislature."

## V.

As noted above, California decisions applying section 459 have upheld burglary convictions based upon entry into diverse types of rooms—among them ticket offices, liquor cages, business offices, enclosed counter areas, school classrooms, hotel rooms, apartments, a kitchen in a single-family home, and, in *McCormack, supra,* 234 Cal.App.3d 253, a bedroom within a single-family home. These decisions—and *McCormack* in particular—are consistent with common law cases from other jurisdictions, recognizing as burglary the entry (with requisite intent), from within a home, into a bedroom inside the home.[18] Although the burglary statute historically has been the subject of frequent amendments, our Legislature has not revised

---

[18]The common law is well illustrated by *State v. Contreras-Cruz* (R.I. 2001) 765 A.2d 849. In that case the defendant was charged with burglary for entering the bedroom of his brother and the brother's girlfriend, while the brother was absent, with intent to sexually assault the girlfriend. The defendant claimed that he had his brother's permission to be inside the house. Applying Rhode Island General Laws section 11-8-1 (1956) (which in turn incorporates the common law definition of burglary), the Rhode Island Supreme Court rejected the defendant's contention that permission to be inside the house negated the entry element. The court observed: "It has long been held that while one may have permission to enter parts of a dwelling, entry into a room within that dwelling that a person does not have permission to enter can constitute burglary." (*State v. Contreras-Cruz, supra,* at p. 854; see also *State v. Descant* (1906) 117 La. 1016 [42 So. 486, 488] [entry by ostensible house guest, from within the home, into a woman's bedroom, constitutes burglary]; *Wilson, supra,* 1 N.J.L. 439, 441 [described *ante,* fn. 14]; *Rio, supra,* 230 P.2d 308, 311, and authorities cited.)

section 459 to disapprove any of these decisions.[19] ▮▮▮ Furthermore, although in recent years the legislatures of many of our sister states have enacted statutes that have narrowed and confined the type of room that will qualify as the subject of a burglary (see *ante*, fns. 7 & 8), the California Legislature, when presented with legislation that proposed similar amendments, did not adopt any similar amendment to our burglary statute.[20]

▮▮ As the court observed in *McCormack, supra,* 234 Cal.App.3d 253, treating the entry at issue here as an entry for burglary is consistent with the personal security concerns of the burglary statute, because entry, from inside a home, into a bedroom of the home "raise[s] the level of risk that the burglar will come into contact with the home's occupants with the resultant threat of violence and harm." (*Id.*, at p. 257.) Here, the 22-year-old victim, living in her family's home, reasonably could expect significant additional privacy and security when she retreated into her own bedroom. Accordingly, consistent with California decisions construing section 459, reaching back to *Young, supra,* 65 Cal. 225, and consistent with the common law and the history of section 459, we conclude that the unadorned word "room" in section 459 reasonably must be given its ordinary meaning. It follows that the trial court did not err in this case by instructing the jury that entry into Ana's bedroom with the specific intent to commit rape constitutes a burglary in violation of section 459.[21]

---

[19]Section 459 has been amended nine times since its codification in 1872, and has been the focus of at least 23 proposed amendments in the four decades since 1960. (See Table of Sections Affected in the 1960-1970 volumes of Cal. Legislature, Final Calendar of Legislative Business, and in the 1973-2000 volumes of Cal. Legislature, Legislative Index and Table of Sections Affected.) The section has been amended six times since 1977.

[20]In the 1970's, a period during which many other jurisdictions amended their burglary statutes consistent with the Model Penal Code to limit the subject of burglary to certain categories of rooms (for example, those that are "separately occupied or secured"), omnibus legislative proposals that would have incorporated that *same* limitation in section 459 were introduced in the California Legislature on four occasions but were not enacted. (See Sen. Bill No. 1506 (1972 Reg. Sess.) [proposed new Criminal Code, § 12601, subd. (a)]; Sen. Bill No. 39 (1973-1974 Reg. Sess.) [same]; Sen. Bill No. 565 (1975-1976 Reg. Sess.) [same]; Sen. Bill No. 27 (1977-1978 Reg. Sess.) [same].)

To be sure, it is important that we be careful not to place undue significance on these unsuccessful legislative proposals. Each of the bills referred to in the prior paragraph proposed omnibus legislation that would have substantially overhauled the entire Penal Code. As we have noted, "unpassed bills, as evidences of legislative intent, have little value" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1396 [241 Cal.Rptr. 67, 743 P.2d 1323], and cases cited), and provisions contained within unpassed *omnibus* bills are, if anything, even less reliable indicants of legislative intent. Nonetheless, this history does reveal that although there have been some relatively recent attempts to limit the term "room" in section 459, to date no such proposal has been adopted.

[21]In reaching this conclusion, we emphasize that our holding does not signify that a defendant who, with the requisite felonious intent, enters multiple unsecured rooms in a

## VI.

In light of California decisions construing section 459, the policy underlying that statute, common law antecedents, and the history of section 459, we conclude that the trial court did not err in defining burglary to include entry into the victim's bedroom with the specific intent to commit rape.

We reverse the judgment of the Court of Appeal insofar as it is contrary to the above conclusion, and remand the matter to that court with directions to affirm the conviction of burglary and the true finding on the related section 667.61 allegation.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.

On June 19, 2002, the opinion was modified to read as printed above.

---

single-family house properly may be convicted of multiple counts of burglary. As noted above, some California decisions have questioned whether multiple convictions might be sustained on such facts (*Thomas, supra*, 235 Cal.App.3d 899, 906, fn. 2; see also *Elsey, supra*, 81 Cal.App.4th 948, 959), and we have no occasion to consider that issue in this case, in which multiple burglary convictions are not involved.