Filed 4/13/26  P. v. Gelturan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D086816 |
| Plaintiff and Appellant, | (Super. Ct. No. SCE420986) |
| v. | |
| UGUR GELTURAN, | |
| Defendant and Respondent. | |

APPEAL from orders of the Superior Court of San Diego County, John M. Thompson, Judge.  Reversed.

Annie Fraser, under appointment by the Court of Appeal, for Defendant and Respondent.

Summer Stephan, District Attorney, Linh Lam, Deputy District Attorney Chief, Valerie Ryan and Sara J. Staninger, Deputy District Attorneys, for Plaintiff and Appellant.

The People appeal from trial court orders dismissing a count charged in the complaint against Ugur Gelturan as well as special allegations on the two remaining counts.

Gelturan was charged with two counts of forcible rape. (Pen. Code,[1] § 261, subd. (a)(2); counts 1 & 2.) Both counts had a special "one strike enhancement" for committing first degree burglary with the intent to commit rape. (§ 667.61, subd. (a), (c), & (d).) He was also charged with assault with intent to commit rape during the commission of a first degree burglary. (§ 220, subd. (b); count 3.)

Defense counsel moved to dismiss count 3 under section 995 and later moved to dismiss the special allegations attached to counts 1 and 2. The trial court granted the motions, finding insufficient evidence of intent at the time of entry. The People argue the trial court erred because sufficient evidence of the requisite intent existed to establish probable cause. We agree, and we reverse the orders.

FACTUAL AND PROCEDURAL BACKGROUND

At a preliminary hearing, a magistrate heard testimony from the victim, J.A. J.A. lived in a shed on the same property as a Turkish family. Gelturan, also Turkish, lived in his car on the street. J.A. became friendly with the family and Gelturan. One day J.A. and Gelturan were dining with the family, and J.A. learned Gelturan was leaving the state. She and Gelturan exchanged Facebook messages, including him saying he "wished [they] could hug before he left" and her agreeing. Her last message was, "If I can stay up, I will sneak out. When will everyone else be back?" J.A. stopped responding to Gelturan around 11:00 p.m. and fell asleep. Gelturan sent more messages and called four times, but J.A. did not answer.

---

[1]     Undesignated statutory references are to the Penal Code.

2

At around 2:00 a.m., J.A. awoke to a loud noise as Gelturan entered her shed. Gelturan approached J.A. and told her he loved her and wanted her to have his children. He ripped off her blanket, started kissing her, and tried to undress her but got frustrated as J.A. tried to cover herself. She told him, "This isn't ok," pushed his chest, and said "No" between 20 to 30 times in English and Turkish. He penetrated her vagina, pinned her down, penetrated her again, and ejaculated on her stomach. He left after J.A. told him she needed to go to work. She called a friend and then the police. Meanwhile, Gelturan sent J.A. Facebook messages, saying he "couldn't control himself" and asking her not to complain to anybody.

The magistrate found sufficient proof to bind over Gelturan on all three counts and the special allegations. For count 3, assault with intent to commit rape during burglary, the magistrate concluded that circumstantial evidence existed to show Gelturan intended to commit rape when he entered J.A.'s shed.

Gelturan filed a section 995 motion to dismiss count 3, arguing the magistrate erroneously conflated intent to have consensual sex with intent to rape. The superior court judge granted the motion. After hearing argument, the court explained that the dispositive issue was the defendant's initial conversation with the victim upon entering the residence. The court noted the defendant told her he loved her, wanted to be with her, and wanted her to have his children. The victim responded that this was "too much." The defendant then demanded that she tell him she liked him, after which the physical contact began. Based on this sequence, the court concluded there was insufficient evidence to proceed.

Later, Gelturan moved to dismiss the section 667.61 special allegations attached to counts 1 and 2, because they were based on the same facts and

3

charge contained in the now-dismissed count 3.  The People opposed the request and sought reconsideration of the order dismissing count 3.  The trial court granted the motion to dismiss the special allegations and denied the People's reconsideration request.

The People filed a petition for writ of mandate seeking review of the order granting the section 995 motion and dismissing the special allegations. We denied the petition without prejudice to request a stay of trial and to expedite the appeal, once filed.  The People then appealed the orders.

DISCUSSION

The People contend the trial court failed to defer to the magistrate's conclusions and instead erroneously relied on its own interpretation of the evidence in dismissing count 3 and the special allegations.  They further argued that the purposefulness and immediacy of Gelturan's actions leading up to the rape, and the rape itself, support an inference that he harbored the requisite intent to rape when he entered the victim's dwelling, and therefore the magistrate correctly held him to answer count 3 and the special allegations.  We agree.

At the preliminary hearing, the magistrate's task is to decide whether there is sufficient cause to believe the defendant committed the charged offense.  (*People v. Superior Ct.* (2024) 102 Cal.App.5th 499, 510 (*Chagolla*).) In this context, sufficient cause means reasonable and probable cause— namely, evidence that would cause a person of ordinary caution and prudence to strongly and conscientiously suspect the defendant's guilt.  (*Ibid.*)  An information, therefore, may not be set aside if there is some rational basis for concluding that a crime was committed and that the defendant committed it. (*Ibid.*)

4

Evidence sufficient to hold a defendant to answer need not be sufficient to support a conviction. (*People v. Scully* (2021) 11 Cal.5th 542, 582.) Probable cause reflects a level of proof below a preponderance of the evidence, and courts have described this threshold as " ' "exceedingly low." ' " (*Chagolla, supra*, 102 Cal.App.5th at p. 510.)

On a motion under section 995, the superior court's function is limited to reviewing the evidence; it may not reweigh that evidence or resolve factual conflicts. (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529.) On appellate review we disregard the superior court's ruling and directly review the magistrate's decision. (*Chagolla, supra*, 102 Cal.App.5th at p. 510.) Any factual findings made by the magistrate are conclusive if supported by substantial evidence, while we review the legal question of probable cause independently. (*Ibid.*)

Section 220, subdivision (b) makes it a criminal act when a person, in the commission of a first degree burglary, assaults another with the intent to commit rape. (§ 220, subd. (b); CALCRIM No. 890.) To commit a first degree burglary, a defendant must have the intent to commit a felony prior to entering the home. (*People v. Sparks* (2002) 28 Cal.4th 71, 79–80; CALCRIM No. 1700.) The requisite intent is to (1) have sexual intercourse with the victim; and (2) use force to overcome their resistance. (*People v. Elder* (1969) 274 Cal.App.2d 381, 398 (*Elder*).) Such specific intent "is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstance disclosed by the evidence." (*People v. Myles* (2023) 89 Cal.App.5th 711, 734 (*Myles*).)

Similarly, the special allegations under section 667.61 for counts 1 and 2 require proof that (1) the defendant entered an inhabited house or room; (2) when the defendant entered the house or room, the defendant intended to

5

commit rape; and (3) after entering the house or room, the defendant committed rape.  (CALCRIM No. 3178.)  The intent to commit the rape must occur prior to entry into the house or room.  (*People v. Estrada* (1997) 57 Cal.App.4th 1270, 1276–1277; CALCRIM 3178, item 2.)

The magistrate relied on J.A.'s testimony that she was awakened by Gelturan entering her home, "frantically shutting the door," then "walking toward her" in a "direct line," while "breathing heavily," and going "directly to her bed."  As the magistrate explained, Gelturan "did not come in just asking for a hug," but instead approached her immediately, attempted to remove her clothing despite her objections, and "forced himself upon her as she repeatedly told him 'No' 20 to 30 times."  The magistrate properly recognized that circumstantial evidence may establish intent to commit rape, "which is ultimately what occurred," and inferred that Gelturan harbored that intent at the time he entered the shed.

On our independent review, we agree with the magistrate's conclusion that a reasonable person could entertain a strong suspicion that Gelturan entered with the intent to commit rape, thereby establishing probable cause as to count 3 and the section 667.61 special allegations.  (*Chagolla, supra*, 102 Cal.App.5th at p. 510.)

We, therefore, reject Gelturan's argument that the magistrate misinterpreted the evidence and should instead have found that Gelturan entered the dwelling for purposes of consensual sex, based on their prior text message exchanges.  It is not the role of a reviewing court to determine whether an alternative inference might also be reasonable; the question is whether the evidence presented at the preliminary hearing constituted a rational basis for assuming the possibility that Gelturan was guilty of the

6

crimes charged.  (*Zemek v. Superior Court* (2020) 44 Cal.App.5th 535, 544–545 (*Zemek*).)  If so, "probable cause should be found."  (*Id.* at p. 546.)

Nor are we persuaded by Gelturan's claim that the magistrate improperly relied on the completed rape as creating a presumption of intent.  Because intent "is rarely susceptible" to direct proof, it may be inferred from the totality of the circumstances, including Gelturan's conduct before and during the offense as circumstantial evidence of intent.  (*Myles, supra*, 89 Cal.App.5th at p. 734; see *Elder, supra*, 274 Cal.App.2d at p. 398.)

While the commission of a crime after entry may itself support an inference that the requisite intent existed beforehand, the magistrate did not rely on the completed act alone.  (See *People v. Letner and Tobin* (2010) 50 Cal.5th 99, 167–168 [finding it reasonable to infer a purely social visit did not spontaneously lead to attempted rape and other crimes].)  Instead, the magistrate considered the manner of entry, Gelturan's immediate and forceful conduct, and J.A.'s repeated objections as circumstantial evidence of preexisting intent.  On this record, we are satisfied that evidence presented at the preliminary hearing was sufficient for a reasonable person to entertain a strong suspicion that Gelturan entered the victim's home with the intent to commit rape, and we conclude that probable cause was properly established.

## DISPOSITION

We reverse the trial court's orders granting the section 995 motion and dismissing the section 667.61 special allegations.  We reinstate count 3 and the section 667.61 special allegations in counts 1 and 2.


KELETY, J.

WE CONCUR:


DATO, Acting P. J.


HUFFMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.