Filed 2/13/14  In re Jeffrey B. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JEFFREY B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>           v.<br><br>JEFFREY B.,<br><br>      Defendant and Appellant. | G047763<br><br>(Super. Ct. No. DL043220)<br><br>O P I N I O N |

              Appeal from a judgment of the Superior Court of Orange County, Cheryl L. Leininger, Judge.  Affirmed as modified.

              Elizabeth Garfinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

              Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Ronald A. Jakob and Sean M. Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

An Orange County juvenile court sustained an amended wardship petition alleging Jeffrey B. (Minor) committed first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a); count 1)[1] and grand theft (§ 487, subd. (a); count 2). On both counts, Minor did not personally commit the act, but aided and conspired with the principal. Minor was declared a ward of the court and sentenced to a maximum term of confinement of six years eight months. Minor was ordered to serve 120 days in the "ASSERT" program, which is a drug program. Following his participation in the program, the juvenile court ordered that Minor be returned to his parents with probation conditions.

Minor timely appealed, claiming the evidence was insufficient to sustain the burglary charge, that his maximum sentence should have been six years (not six years eight months), and that his probation conditions are unconstitutional. We agree Minor's maximum term of confinement should be six years. We also modify one of Minor's probation conditions. In all other respects we affirm the judgment.

FACTS

Zeanna Lowden lived with her daughter in her daughter's Orange County home. Between April and June of 2012,[2] Lowden's daughter invited K.B. (a friend of Minor's, and ultimately the principal in the conspiracy to burglarize the home) to stay on the couch in the living room "for a short period of time" in exchange for helping her and her mother prepare to move to Oregon. K.B., who was living in Oregon prior to staying at the Lowden house, had lived in Lowden's neighborhood when he was younger. In

---

[1] All statutory references are to the Penal Code.

[2] All dates in this opinion refer to the year 2012.

2

addition to being provided somewhere to stay and being paid for his assistance, K.B. was given the ability to reconnect with some of his old friends, including Minor.

Although K.B. was provided a house key and was able to enter and leave the house without an escort, Lowden and her daughter placed restrictions on K.B.'s ability to invite friends over to the house. For example, when they had pizza one night, Lowden allowed K.B.'s friends to enter the kitchen to get pizza and a drink, which was about 10 feet into the house, but his friends were not permitted to walk past the kitchen. And after K.B. had been in the house for around a month, Lowden told K.B. that Minor was the only friend he could have over, as she thought Minor was a "nice young boy."

Lowden's bedroom was private, and everyone, including K.B., knew that it was her exclusive bedroom. When Lowden was not in her bedroom, she kept the door to the room shut. K.B. was not allowed to enter the bedroom without her permission.

Lowden only permitted K.B. to enter her bedroom once, and that was when he cleaned the bedroom carpet in June. On that occasion Lowden gave K.B. permission to enter her bedroom, and she was present while K.B. was inside the bedroom. Lowden usually kept her jewelry box in her bedroom, but she put it in the hallway for a couple of days while K.B. cleaned the carpet. Lowden checked the top portion of the box after she put it back in her bedroom. The top portion of the box contained her rings, and none of them appeared to be missing.

On June 26, Lowden's daughter called her to look at their desktop computer, which they allowed K.B. to use. K.B. had left his Facebook page open, and Lowden was able to read a series of messages exchanged between K.B. and Minor dating back to May 29. In them, Minor instructed K.B. to check whether "she" — apparently a reference to Lowden — had any gold. K.B. told Minor that he thought it was in "her" bedroom, but that "she" was in there sleeping. Minor told K.B. to take silver spoons or forks from a cabinet in the living room instead. Minor advised K.B. to take something that "she" would not notice, such as silverware from a box labeled "International Silver."

3

K.B. said he could not find the items Minor described. However, K.B. said he would continue searching the next day. He sent a message to Minor saying, "[T]here is a shit ton at here granmas im going 2 marrow il fucken hook up then." Minor again told K.B. to look for forks and spoons, because knives were "worth nuthin." Minor told K.B. not to "lag," and to get "some heavy shit."

Minor then asked K.B. what he knew about gold, to which K.B. responded, "[G]old is really light and malible." Minor told K.B. to take a gold piece that was "heavy" and "with just gold," "like a necklace." Minor told K.B. not to sell anything without him, as they could look up the price of gold together so they could avoid being scammed. K.B. then invited Minor over to smoke marijuana, saying he had "like 2 bowls." The next day, Minor asked K.B. if he got "more." K.B. told Minor he "got a gram."

About a month later, K.B. sent Minor a message that said, "U cant get no money." Minor responded, "Nothing foo. [¶] I mean top of my head one more 14 k. we get 20 bucks." K.B. said, "Ill be here. [¶] ok. [¶] i got 14k." Minor said he would come right over, and told K.B., "Ima goo pawn it in 30 min."

After reading Minor's messages, Lowden spoke with a young man named Alex Medina, who told her that he had received some jewelry from Minor. Medina said he sold the jewelry at a local pawn shop. Lowden went to the pawn shop and found some of her jewelry, including a custom made golden ring with a blue diamond and one of her mother's pearl rings.

Minor was detained shortly thereafter and taken to the police department. He waived his *Miranda*[3] rights and agreed to speak with a police officer. When the officer asked Minor if he knew why he was there, the Minor replied, "because of the jewelry that they had stolen and pawned." Minor went on to explain that he and K.B. had

---

[3]     *Miranda v. Arizona* (1966) 384 U.S. 436.

decided to steal and pawn property from the Lowden residence to fund marijuana purchases. He told Officer Phillip Schmidt they started stealing jewelry from Lowden's home in April. Minor said K.B. would take the jewelry from Lowden's house and then give it to Minor. Minor would then go with a friend to a pawn shop where his friend sold the jewelry and gave Minor the money. Minor said he pawned about 10 rings.

DISCUSSION

*Substantial Evidence Supports the Burglary Finding*

Minor's principal argument on appeal is that he cannot be liable as an accomplice to burglary because K.B., the principal, cannot be liable for burglary. (See *People v. Perez* (2005) 35 Cal.4th 1219, 1227 ["aiding and abetting liability cannot attach unless the substantive elements of a predicate offense are met"].) K.B. cannot be liable, Minor contends, because K.B. lived in the home, and one cannot burglarize one's own home.

For that proposition, Minor relies on *People v. Gauze* (1975) 15 Cal.3d 709 (*Gauze*). In *Gauze* the defendant shared a room with two other roommates. After an argument with one roommate, he went and borrowed a shotgun from a neighbor, then reentered the house and shot his roommate in the living room. (*Id.* at pp. 711-712.) The issue was: "Can a person burglarize his own home?" (*Id.* at p. 711.) Answer: Not if, as in *Gauze*, defendant's right of entry "was a personal right that could not be conditioned on the consent of defendant's roommates." (*Id.* at p. 714.)

Subsequent cases have emphasized that the *Gauze* exception applies only where defendant has "an unconditional possessory right to enter." (*People v. Pendleton* (1979) 25 Cal.3d 371, 382; see also *In re Andrew I.* (1991) 230 Cal.App.3d 572, 579 ["Permission to enter, whether express or implied does not confer upon the entrant an unconditional possessory interest in the premises"].) Thus, a defendant may be convicted

5

of burglary even though defendant enters the victims' residence at the express invitation of one of the victims who owned the cabin in which the crimes occurred. (*People v. Frye* (1998) 18 Cal.4th 894, 953-955 (*Frye*), disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) "Any person who enters a house or building with the intent to commit a felony or theft is guilty of burglary. [Citation.] The entry need not be a trespass to support a burglary conviction. [Citations.] Thus, a person who enters for a felonious purpose may be found guilty of burglary even if he enters with the owner's or occupant's consent." (*Frye*, *supra*, 18 Cal.4th at p. 954.)

Here, K.B.'s right to enter the home was "conditioned on the consent of" Lowden or Lowden's daughter. (*Gauze*, *supra*, 15 Cal.3d at p. 714.) He was a temporary guest with no *right* to be there. Unlike the defendant in *Gauze*, he could be "'refused admission at the threshold'" of the house, "or be 'ejected from the premises after the entry was accomplished.'" (*Ibid.*) Accordingly, K.B.'s temporary residence in the home was not a bar to a burglary finding.

Even if K.B.'s entry into the *home* had not supported a burglary finding, moreover, his entry into Lowden's private bedroom did. Section 459 defines burglary as entry with intent to commit theft or a felony into a variety of structures, including, importantly, any room. Our high court applied this term in similar circumstances in *People v. Sparks* (2002) 28 Cal.4th 71 (*Sparks*). There, defendant, a magazine salesman, was invited into the victim's home. The victim eventually asked defendant to leave and walked into her bedroom to retrieve her shoes. The defendant, who had been sitting at the dining room table, followed the victim into her bedroom and raped her. (*Id*. at p. 74.) The issue was whether a bedroom is a "room" for purposes of section 459. It is "the unadorned word 'room' in section 459 reasonably must be given its ordinary meaning." (*Sparks,* at p. 87.) Accordingly, the court upheld the burglary conviction, stating, a "defendant's entry into a bedroom within a single-family house with the requisite intent

6

can support a burglary conviction [even though] that intent was formed only after the defendant's entry into the house." (*Id*. at p. 73.)

Minor tries to distinguish *Sparks* on the ground that the victim had asked the defendant to leave prior to the rape, and thus the defendant no longer had the right to be there. But the *Sparks* decision did not turn on whether the defendant had the owner's consent to be in the house; to the contrary, at one point the court referred to defendant as an "ostensible guest." (*Sparks*, *supra*, 28 Cal.4th at p. 81.) Rather, the dispositive issue was whether an unlocked room in a single family dwelling is a "room" for purposes of section 459. (*Sparks,* at p. 81.) There is a reason the court was focused on that issue: consent, or lack thereof, does not matter. Someone who entered with the owner's consent may still be convicted of burglary. (*Frye*, *supra*, 18 Cal.4th at p. 954.) Thus it is irrelevant that K.B. had permission to be in the house. What matters is whether K.B. had an unconditional possessory interest in the bedroom. Plainly, K.B. did not have such an interest. Accordingly, K.B.'s temporary residence in the home did not preclude a finding of burglary. (See also *People v. Abilez* (2007) 41 Cal.4th 472 [defendant was temporarily residing in the house; his unauthorized entry into his mother's bedroom was sufficient for burglary].)

Next, Minor contends he cannot be held liable as an accomplice because burglary was not the natural and probable consequence of the encouragement Minor provided to K.B. Minor argues that in the Facebook posts, "Minor makes only the most general suggestions about getting gold, and then, ignoring [K.B.'s] reference to Ms. Lowden's bedroom, the Minor specifically suggests that [K.B.] look for silver in the cabinet *in the living room*. [Citation.] Thus, the only act or advice on the part of the Minor prior to the completion of the theft is a suggestion to look for silver in the very room that [K.B.] was residing in. Therefore, even if Ms. Lowden's bedroom could be considered a separate dwelling place from [K.B.'s], there was no evidence that the Minor

7

intended to encourage [K.B.] to burglarize Ms. Lowden's room, as he had only advised [K.B.] to steal property located in his own bedroom."

This argument assumes, however, that K.B. could not commit burglary by entering the living room. We rejected that argument above. Further, in the Facebook posts, in addition to encouraging the theft of silverware, Minor also encourages the theft of gold, and in particular a gold necklace. Such necklaces are normally kept in bedrooms, and thus there is sufficient circumstantial evidence that Minor encouraged K.B. to enter Lowden's bedroom.[4]

*Probation Conditions*

Next, Minor contends his probation condition prohibiting him from associating with gang members or tagging crew members is unconstitutional. He makes the challenge in two forms. First, he claims the condition fails the "*Lent* test" (*People v. Lent* (1975) 15 Cal.3d 481, 486) because it has no relation to the crime Minor was found to have committed. Second, he claims the condition is vague.

Minor forfeited his first contention by failing to raise the issue in the trial court. Minor did not object to any of his probation conditions. Application of the forfeiture rule was thoroughly explored in *In re Sheena K.* (2007) 40 Cal.4th 875 (*Sheena K.*), where the court concluded that "[a]pplying the rule to appellate claims involving . . . unreasonable probation conditions is appropriate, because characteristically the trial court is in a considerably better position than the Court of Appeal to review and modify a . . . probation condition that is premised upon the facts and circumstances of the individual case. Generally, application of the forfeiture rule to such claims promotes greater procedural efficiency because of the likelihood that the case would have to be remanded

---

[4] Minor does not challenge the finding that K.B. had the intent to commit theft *prior* to entering either the house or Lowden's bedroom.

8

to the trial court for resentencing or reconsideration of probation conditions. [¶] In contrast, an appellate claim — amounting to a 'facial challenge' — that phrasing or language of a probation condition is unconstitutionally vague and overbroad because, for example, of the absence of a requirement of knowledge as in the present case, does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts — a task that is well suited to the role of an appellate court." (*Id.* at p. 885.)

Minor notes that the *Sheena K.* court allowed an appellate court to exercise its discretion to entertain a forfeited claim, and he asks us to do so here. (*Sheena K.*, *supra*, 40 Cal.4th at p. 887.) In making such allowance, however, the court reiterated that "'discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.'" (*Id.* at p. 888, fn. 7.) We do not view the reasonableness of Minor's gang-association probation term as the sort of extraordinary issue that merits excusing forfeiture.

We will, however, review Minor's vagueness and overbreadth claims. The trial court articulated the challenged probation condition as follows at the sentencing hearing: "You are not to associate with anyone who is a member of a criminal street gang or a member of a tagging crew." The condition was stated slightly differently in the court's minute order: "Minor not to associate with anyone who you know is disapproved by the court, your parent/guardian, or probation officer, or anyone who you know is on probation or parole, or a criminal street or tagging crew or using/selling/possessing, or under the influence of alcohol or controlled substances including [K.B.]"

Minor first contends this condition is overbroad because it is unclear whether Minor is precluded from associating with only *known* members of a gang or tagging crew or all such members. The Attorney General contends that, applying proper grammatical rules, the condition clearly applies only to known members of a gang or tagging crew.

9

There seems to be no disagreement that the condition should apply only to *known* members of a gang or tagging crew. Indeed, that is the law. (*In re Justin S.* (2001) 93 Cal.App.4th 811, 816 ["Prohibiting association with gang members without restricting the prohibition to *known* gang members is '"a classic case of vagueness"'"].) We prefer not to dissect the grammar to determine whether either or both of the formulations of the probation condition already contain this limitation. There is sufficient ambiguity in the court's multiple pronouncements that the expedient course is to simply modify the probation condition. Accordingly, the relevant language shall be modified to state, "You are not to associate with anyone who you know is a member of a criminal street gang or a member of a tagging crew."

Minor's next challenge is that the terms "criminal street gang" and "tagging crew" are ambiguous. Minor invites us to modify the condition to specifically reference the definition of "criminal street gang" in section 186.22, subdivisions (e) and (f). Minor also invites us to define "tagging crew," though there is no statutory reference for that term.

We find both terms are sufficiently clear as stated. Probation conditions need only "'*reasonable* specificity.'" (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1117.) "'Condemned to the use of words, we can never expect mathematical certainty from our language.'" (*Ibid.*) Both of the challenged terms are sufficiently common to not need further definition.

Finally, both parties agree the court erred in imposing a maximum term of confinement of six years eight months. The maximum sentence for burglary is six years. (§ 461, subd. (a).) Although the court did not explain the imposition of an additional eight months, the only source for that addition would be a sentence of one-third the middle term on the grand theft count. But sentence on the grand theft count should have been stayed under section 654. (*People v. Jaramillo* (1962) 208 Cal.App.2d 620, 628 ["Where a person enters a house to commit theft, and does commit theft, he may be guilty

10

of both burglary and larceny, but under the 'one objective' test he may be punished for only one offense"].)  Accordingly, we will modify the judgment by staying the additional eight months, thereby resulting in a maximum term of confinement of six years.

DISPOSITION

The probation condition concerning affiliation with members of a criminal street gang or tagging crew is modified to state, "You are not to associate with anyone who you know is a member of a criminal street gang or a member of a tagging crew." The judgment is also modified by setting the maximum term of confinement to six years. In all other respects, the judgment is affirmed.

IKOLA, J.

WE CONCUR:

O'LEARY, P. J.

FYBEL, J.

11