KRUGER, J.,
Concurring.—Defendant Hugo Garcia was convicted of several offenses, including burglary, aggravated kidnapping, and rape, based on a course of criminal conduct that began with the robbery of a store and ended with the forcible rape of a store employee in a bathroom located in the back of the store. The narrow legal question before us is whether Garcia was properly convicted of two burglaries, rather than one, based on his having entered both the store and a room within the store with intent to commit a felony.
Although the Court of Appeal described the issue as one of first impression, the scenario is a common one: Burglaries commonly involve both an entry into a structure and an entry into at least one room within the structure. It is therefore telling that the People have not been able to identify, in the centuries-long history of the law of burglary, any judicial precedent for upholding multiple burglary convictions under comparable circumstances. This is because, as this court today holds, the law does not permit such a result. As the majority concludes, “the simple fact that a defendant has committed two entries with felonious intent into a structure and a room within that structure does not permit multiple burglary convictions. Where a burglar enters a structure enumerated under [Penal Code] section 459 with the *1134 requisite felonious intent, and then subsequently enters a room within that structure with such intent, the burglar may be charged with multiple burglaries only if the subsequently entered room provides a separate and objectively reasonable expectation of protection from intrusion relative to the larger structure.” (Maj. opn., ante, at pp. 1119-1120.)
I join in that conclusion. I write separately to underscore what I understand to be the key points of the majority’s ruling. California’s burglary statute, Penal Code section 459 (section 459), authorizes separate burglary convictions if a burglar enters separate houses, apartments, shops, stores, or internal rooms that are functionally similar to these separate structures. Whether a burglar is subject to conviction once or twice—or even three or more times over—does not depend on the happenstance of the building’s floor plan. Nor does it depend, as the People have mistakenly read our decision in People v. Sparks (2002) 28 Cal.4th 71 [120 Cal.Rptr.2d 508, 47 P.3d 289] to suggest, on an abstract consideration of whether one room within a building supplies greater security or privacy than another. Certainly a central purpose of the burglary statute is the protection of privacy and security against the dangers posed by outside intruders, and as the majority today instructs, courts should consider this purpose in determining whether an entry into an internal room supports a separate burglary conviction. But courts must do so with a view to answering the ultimate question under the law: Whether separate burglary convictions are warranted because the burglar has entered two or more separate spaces that are separately protected from intrusion under section 459.
Section 459 provides, as relevant here: “Every person who enters any house, room, apartment, tenement, shop, warehouse, store ... or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary.” Although this list of covered locations includes the word “room,” that reference must be understood in context of the other items on the list. (See, e.g., Moore v. California State Bd. of Accountancy (1992) 2 Cal.4th 999, 1011-1012 [9 Cal.Rptr.2d 358, 831 P.2d 798] [describing the noscitur a sociis canon of construction, under which the meaning of items in a list is determined “by reference to the others”].) As the majority notes, “[v]irtually all the places in section 459’s list of covered locations, with the exception of ‘room,’ are by their nature separately occupied, stand-alone structures . . . .” (Maj. opn., ante, at p. 1124.) Although other listed spaces, such as apartments and shops, may be enclosed within a larger structure, they, too, are functionally equivalent to stand-alone structures. As the Legislature would have been well aware, houses, apartments, and stores typically contain multiple interior rooms. The Legislature’s inclusion of an unadorned reference to “room” in this list is not reasonably read to indicate an intent to separately prohibit the entry of both a building and each and every interior room the building may contain. (See People v. Gauze (1975) 15 Cal.3d 709, *1135 712-713 [125 Cal.Rptr. 773, 542 P.2d 1365] (Gauze) [“[B]y carefully delineating the type of structures encompassed under section 459, the Legislature has preserved the concept that burglary law is designed to protect a possessory right in property, rather than broadly to preserve any place from all crime.”].) Rather, it indicates an intent to separately prohibit entry into only those rooms that are similar in nature to the other items in section 459’s list of covered places; that is, rooms that, though located within a larger structure, are functionally similar to a separate house, apartment, shop, or store. (Maj. opn., ante, at pp. 1124-1125.)
This conclusion is consistent with the common law history that forms the backdrop to section 459. (Cf. People v. Ceja (2010) 49 Cal.4th 1, 10 [108 Cal.Rptr.3d 568, 229 P.3d 995] [“ ‘ “ ‘A statute will be construed in light of common law decisions, unless its language “ ‘clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter Blackstone explained that a chambers ‘“in a college or an inn of court, where each inhabitant hath a distinct property,” could be separately burglarized, as could ‘“a room or lodging” in a house, while occupied by a lodger. (4 Blackstone, Commentaries 225.) Although section 459 unquestionably departs in certain respects from the definition of burglary that prevailed in Blackstone’s day—i.e., the unlawful breaking and entering of a dwelling at nighttime with the intent to commit a felony therein (4 Blackstone, supra, at p. 224)—there is no evidence that the Legislature, either in enacting section 459 or in amending its predecessor statute in 1858 to add the word “room,” intended to depart from the common law by separately punishing both a burglar’s initial entry into a building and each subsequent movement between interior rooms. (See People v. St. Clair (1869) 38 Cal. 137, 138; People v. Stickman (1867) 34 Cal. 242, 244-245.)
The People’s contrary position would produce rather surprising results. It would mean that a burglar who enters a single-family home and goes from room to room in search of valuables would be subject to punishment not just once, or even twice, but as many times as there are doorways that separate one room from another. A burglar who entered a one-bedroom apartment would be subject to two convictions, whereas the burglar who entered the studio apartment next door would be subject to only one. As the majority correctly explains, this is not the law.
In fairness to the People, they did not invent their view out of whole cloth. As they have pointed out, in People v. Sparks, supra, 28 Cal.4th 71 (Sparks), we said that the word “room” in section 459 “must be given its ordinary meaning” (Sparks, at p. 87), rejecting the argument that it “applies only to *1136 those rooms as to which there is an expectation of protection from intrusion—from room to room—that is comparable to the expectation of protection from intrusion into a house from outside the house” (id. at p. 76). But as the majority observes, Sparks did not involve a defendant charged with separate burglaries of an internal room and its enclosing structure. Rather, the question in Sparks concerned the burglary conviction of a magazine salesman who was permitted to enter a single-family home to get a glass of water, then followed the victim into her bedroom and raped her. {Id. at p. 74.) The sole issue was whether the defendant’s single burglary conviction could be sustained if the evidence showed that he formed a felonious intent after he entered the victim’s house, but before he entered the bedroom. (Id. at pp. 74-75.) Because Sparks involved just one burglary conviction, we had no occasion to address the question at issue in this case: whether, and under what circumstances, entry into an internal room will support a burglary conviction separate and apart from burglary of the larger structure of which the room is a part. Indeed, we ‘“emphasize[d] that our holding does not signify that a defendant who, with the requisite felonious intent, enters multiple unsecured rooms in a single-family house properly may be convicted of multiple counts of burglary.” (Id. at p. 87, fn. 21.)
Implicit in this discussion was an important distinction between two scenarios in which a felonious entry into an internal room may support a burglary conviction once its enclosing structure has been breached. First, entry with felonious intent into an internal room that, from the perspective of its lawful occupants, is functionally equivalent to a separate house, apartment, shop, or store, constitutes a burglary separate from the burglary of the enclosing structure. (See, e.g., People v. St. Clair, supra, 38 Cal. 137 [the defendant was properly convicted of burglarizing a separately occupied room in a boarding house]; People v. James (1977) 19 Cal.3d 99, 119 [137 Cal.Rptr. 447, 561 P.2d 1135] [the defendant was properly convicted of three separate burglaries based on entries into three separately leased office suites in an office building].) Second, even if the initial entry into a structure is lawful, an entry into an interior room with felonious intent constitutes a burglary of the structure itself. (See, e.g., People v. Taylor (2010) 48 Cal.4th 574, 628 [108 Cal.Rptr.3d 87, 229 P.3d 12] (Taylor) [characterizing burglar’s entries into residence and internal bedroom as different bases for concluding the defendant committed “ ‘a single discrete crime’ ”]; People v. Young (1884) 65 Cal. 225, 226 [3 P. 813] [‘“One who enters, with burglarious intent, a room of a house, enters the house with such intent. ... If the room was in the house, and the house was a building, a felonious entry into the room was a felonious entry into the building . . . .” (citations omitted)].)[1]
*1137 The difference between these two scenarios tracks a distinction that has existed for centuries. Just as the common law permitted separate burglary convictions for separate entries into separately occupied rooms in a boarding house, so did the common law permit a conviction for burglary of the structure based on unlawful entry into an internal room. (See 4 Blackstone, supra, at p. 226 [“[I]f a person leaves his doors or windows open, it is his own folly and negligence, and if a man enters therein, it is no burglary; yet, if he afterwards unlocks an inner or chamber door, it is so.”].) As noted, however, there is no comparable rule that separately prohibits an initial entry into a building and movement between internal rooms that are not, in effect, separate units.[2]
The People also look for support in what they understand to be ‘“one of the main policies underlying the burglary statute” as articulated in Sparks: ‘“to prevent intrusion into an area in which the occupants ‘ ‘“reasonably could expect significant additional privacy and security.” ’ ” They derive this approach from Sparks’s observation that ‘“entry, from inside a home, into a bedroom of the home ‘raise [s] the level of risk that the burglar will come into *1138 contact with the home’s occupants with the resultant threat of violence and harm,’ ” and that the burglary victim in that case, “living in her family’s home, reasonably could expect significant additional privacy and security when she retreated into her own bedroom.” (Sparks, supra, 28 Cal.4th at p. 87.)
The observation in Sparks, however, again reflects the peculiar nature of the scenario involved in that case: A guest who is permitted to enter a house, then breaches an interior room with intent to commit a felony, endangers the personal security of the house’s lawful occupants in much the same way as a burglar who possesses the requisite felonious intent from the moment he or she steps across the threshold. Sparks’s observation did not purport to set forth a generally applicable rule for determining whether a defendant may be subject to multiple burglary convictions based on movement between internal rooms.
Nor would any rule based purely on abstract considerations of privacy and security be workable or consistent with the text and background of section 459. As this case demonstrates, “privacy and security” are flexible concepts. The Court of Appeal thought it clear that a store employee could reasonably expect additional privacy and security in the store’s bathroom, versus other rooms in the store. This conclusion is understandable. Bathrooms typically do afford additional privacy and security as compared to surrounding rooms. So, too, do bedrooms, workspaces, and any number of other internal rooms within a home, store, or other location. People commonly lock bathroom doors to maintain privacy from family members, guests, and coworkers; parents may secure basement doors from accident-prone children; children may warn their parents away from their bedrooms by hanging a “keep out” sign. The spaces in which we live and work typically contain numerous indications of occupants’ expectations of additional privacy and security. To treat these ubiquitous features as predicates for imposing multiple burglary convictions would mark an unprecedented expansion of the law of burglary.
That is not to say that considerations of privacy and security are irrelevant to the analysis. Indeed, we have identified the principal purpose of the burglary statute as protection of the privacy and security of a structure’s lawful occupants against the dangers that result from intrusion by unauthorized outsiders: “ ‘Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed ... to forestall the germination of a situation dangerous to personal safety.’ ” (Gauze, supra, 15 Cal.3d at p. 715 [it is *1139 impossible to burglarize one’s own home]; accord, People v. Davis (1998) 18 Cal.4th 712, 722 [76 Cal.Rptr.2d 770, 958 P.2d 1083] [inserting a forged check into the walk-up window at a check cashing facility does not constitute a burglary]; People v. Montoya (1994) 7 Cal.4th 1027, 1042-1043 [31 Cal.Rptr.2d 128, 874 P2d 903] [a burglary is ongoing for purposes of aider and abettor liability while the burglar remains inside the structure].) But section 459 is not framed as an all-purpose, general protection of privacy and security interests. Rather, it serves those interests in a specific way: by forbidding the entry, with felonious intent, into a house, apartment, shop, store, or an internal room that is, in effect, a separate unit—that is, a room functionally similar to a separate house, apartment, shop, or store. Thus, indicators of enhanced privacy and security interests in particular rooms, such as locks and warning signs, are relevant only insofar as they “show that a space is similar in nature to the stand-alone structures listed in section 459.” (Maj. opn., ante, at p. 1129.)
With these principles in mind, the proper resolution of this issue seems clear. Garcia does not challenge his conviction for burglary of the store itself. Had the evidence failed to support a burglary conviction based on Garcia’s entry into the store, then, as in Sparks, the jury could properly have convicted Garcia of a single burglary based on his entry into the bathroom with felonious intent. But this case involves a different question: whether Garcia was properly convicted of two burglaries, rather than one, based on his having entered both the store and its bathroom with felonious intent. As the majority correctly explains, Garcia’s entry into the store’s bathroom did not invade a “separate and objectively reasonable expectation of protection from intrusion relative to the larger structure” (maj. opn., ante, at p. 1120), since the bathroom was part of the store and not, in effect, a separate unit under section 459. Therefore, under the law, Garcia’s entry into the bathroom could not have constituted a burglary separate from his burglary of the store itself.
Liu, J., concurred.

 With the exception of the Court of Appeal’s decision in this case, subsequent decisions have understood Sparks as confined to the situation in which a single burglary charge is based on entry into an internal room. (See Taylor, supra. 48 Cal.4th at pp. 627-628 [observing that *1137 Sparks recognized “that burglary may be committed not only by an entry into a home with the requisite felonious intent, but also by an entry (with the requisite felonious intent) from within the home into a bedroom inside the home,” but noting “this is not to say the evidence in this case showed the commission of two discrete burglaries requiring a unanimity instruction. Rather, the evidence and argument on alternative ‘entries’ bore on the issue of when defendant’s felonious intent arose—whether before entry into the home and/or before entry into the back bedroom—and thus concerned the theory of his liability for a singular burglary” (italics added)]; In re M.A. (2012) 209 Cal.App.4th 317, 324 [146 Cal.Rptr.3d 818] [discussing Sparks and concluding “a burglary committed by unlawful entry into a closet located in a residence constitutes burglary of an inhabited dwelling house'’ (italics added)]; People v. Richardson (2004) 117 Cal.App.4th 570, 576 [11 Cal.Rptr.3d 802] [observing that “People v. Sparks does not stand for the proposition that multiple burglary convictions may be founded on a defendant taking items from several rooms within a single dwelling”].)

 Looking outside of California, I have identified no other jurisdiction that permits multiple burglary convictions based on entry into a structure and a room internal to the structure, unless the internal room serves a similar function for its lawful occupants as that served by a stand-alone structure. (See, e.g., Bedard v. State (2002) 118 Nev. 410 [48 P.3d 46, 48] [upholding multiple burglary convictions based on the defendant’s entry into a commercial office building and separate office suites within that building].) Many states have adopted the Model Penal Code’s definition of burglary, which reads in relevant part: “A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein . . . .” (Model Pen. Code, § 221.1, subd. (1).) As explained in the comment to this section of the Model Penal Code, “[t]he provision in Subsection (1) as to separately secured or occupied portions of buildings and occupied structures takes care of the situation of apartment houses, office buildings, hotels, steamships with a series of private cabins, etc., where occupancy is by unit. It is the individual unit as well as the overall structure that must be safeguarded. Thus, while it would violate this section for a person to make an unprivileged entry into an apartment house for the purpose of stealing money or other valuables from a common safe, it also would violate the burglary provision if an intrusion is made into a single unit, even by an occupant of another unit in the same structure.” (Model Pen. Code & Commentaries, com. 3(b) to § 221.1, p. 73.)